UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARNOLD MCALLISTER, an individual,

    Plaintiff,

v.                              Case No: 2:14-cv-403-FtM-29CM

LEE COUNTY, FLORIDA BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Florida, KIM DICKERSON, an individual, and CHRISTINE BRADY, an individual,

    Defendants.

---

**OPINION AND ORDER**

This matter comes before the Court on review of Defendants' Motions to Dismiss (Docs. ##12, 15) filed on October 31 and November 19, 2014. Plaintiff filed Responses (Docs. ##14, 16) on November 10 and November 26, 2014. For the reasons set forth below, the motions are granted in part and denied in part.

**I.**

Plaintiff Arnold McAllister (McAllister) has filed a six-count Amended Complaint (Doc. #8) against Defendants Lee County Florida's Board of County Commissioners (the County), Kim Dickerson (Dickerson), and Christine Brady (Brady) for violating the False Claims Act (FCA) and for depriving McAllister of his

right to freedom of speech. The underlying facts, as set forth in the Amended Complaint, are as follows:

McAllister was hired by the County in 2002 as a pilot and EMT for Medstar, the County's medical helicopter program. (Id. at ¶ 9.) While working for Medstar, McAllister discovered that it was operating one of its helicopters without required federal certifications, which resulted in the County billing Medicare and Medicaid millions of dollars for unauthorized Medstar flights. (Id. at ¶¶ 24-43.) McAllister also discovered various safety issues concerning the County's operation of Medstar helicopters. (Id.) McAllister brought these issues to the attention of his supervisors at Medstar, but was rebuked. (Id. at ¶¶ 43-50.) McAllister was met with similar resistance when he raised the billing and safety issue with other County officials. (Id.) Dissatisfied with the County's response, McAllister raised the issues with the Federal Aviation Administration and began to speak publicly, via news outlets and social media, concerning what he viewed as serious misconduct by the County. (Id.)

McAllister alleges that the County retaliated against him as a result of his speech. (Id. at ¶¶ 62-78.) Specifically, McAllister alleges that he was placed on administrative leave for "trumped up" and "fraudulent" incidents and was subject to harsh performance reviews despite the fact that he had been given excellent reviews prior to his criticism of Medstar and the County.

(Id.)  McAllister was never reinstated from administrative leave. Instead, he was terminated along with other Medstar pilots when the County eliminated the Medstar program in its entirety. (Id.) Although the County claimed that McAllister's termination was the result its decision to discontinue Medstar, McAllister alleges that the County's actual motive was retaliation for his whistleblowing. (Id.) Indeed, McAllister alleges that the County had a pattern and practice of punishing whistleblowers by terminating their employment. (Id.)  In support, McAllister alleges that the County was hiring EMTs at the same time McAllister was terminated, yet never offered to allow McAllister, who was an EMT as well as a pilot, to transfer positions. (Id.)

Based upon these allegations, McAllister brings causes of action against the County, Dickerson, and Brady for violating 42 U.S.C. § 1983 (Section 1983) by depriving him of his First Amendment right to freedom of speech (Counts I-III); and a cause of action against the County for violating the FCA (Count IV).[1] Each Defendant has moved to dismiss.  Dickerson and Brady argue that they are entitled to qualified immunity and, therefore, the Section 1983 causes of action against them (Counts II-III) must be

---

[1] The Amended Complaint also alleges violations of the Florida False Claims Act (Count V) and the Florida Public Whistleblower Act (Count VI).  The County moves to dismiss these counts as time-barred, and McAllister concedes that they are subject to dismissal. (Doc. #14, p. 19 n.5.)  Accordingly, the County's motion to dismiss Counts V and VI is granted.

3

dismissed. The County argues that McAllister's FCA cause of action (Count IV) must be dismissed for failure to state a claim upon which relief can be granted.² Plaintiff responds that the challenged counts are adequately pled.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate

---

² The County has not moved to dismiss the Section 1983 claim brought against it (Count I).

factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

**A. Section 1983 Claims Against Dickerson and Brady (Counts II-III)**

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, and "[t]he law is well established that a state employee may not be discharged in retaliation for speech protected under the First Amendment." Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007). McAllister claims that Dickerson and Brady (County employees sued in their individual capacities) violated his First Amendment rights by discharging him as retaliation for speaking out about Medstar's billing and safety issues. Dickerson and Brady argue

5

that McAllister's claims against them must be dismissed because they are entitled to qualified immunity.

As currently pled, Counts II and III are at best confusing and must be amended to add needed clarity regarding the retaliatory conduct Dickerson and Brady are alleged to have committed. The thrust of Counts II and III appears to be that the Medstar program was shut down in retaliation for McAllister's public disclosure of the County's alleged misconduct. As a result, McAllister was discharged and denied a transfer to an available position as a non-pilot EMT. (Doc. #8, ¶¶ 62-78.) However, the Amended Complaint is not clear as to the role Dickerson and Brady played in the alleged retaliation. For example, while McAllister alleges that Dickerson and Brady *informed* him of his discharge, it is unclear whether they had decision-making authority or merely communicated decisions made by others. (Id. at ¶ 72.) The Court finds that while there may be valid Section 1983 causes of action against Dickerson and Brady arising from the events alleged (for which Dickerson and Brady may or may not be entitled to qualified immunity), Counts II and III need to be clearer as to what actions *taken by Dickerson and Brady* are alleged to have violated McAllister's constitutional rights. The Court will dismiss Counts II and III, but grant McAllister leave to amend.

**B.     FCA Claim Against the County (Count IV)**

"The FCA prohibits fraud against government programs" and allows either the United States government or private citizens to file civil lawsuits to enforce its provisions. U.S. ex rel. Osheroff v. Humana Inc., No. 13-15278, 2015 WL 223705, at *2 (11th Cir. Jan. 16, 2015). To encourage private citizens with knowledge of FCA violations to come forward, the FCA contains an anti-retaliation provision which prohibits employers from discharging, demoting, threatening, harassing, or otherwise discriminating against an employee who acts in furtherance of an FCA claim or attempts to stop an FCA violation. 31 U.S.C. § 3730(h). Employers who violate the anti-retaliation provision are subject to civil suits by aggrieved employees. Id.  To prevail on an FCA retaliation claim, a plaintiff must show (1) that he engaged in conduct protected by the FCA; (2) that the defendant was aware of the plaintiff's actions; and (3) that the plaintiff was discriminated against in retaliation for his conduct. Mack v. Augusta-Richmond Cnty., Ga., 148 F. App'x 894, 897 (11th Cir. 2005).

The prototypical example of conduct protected by the FCA is the filing of an FCA claim. U.S. ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1303 (11th Cir. 2010). The FCA also protects employees from retaliation if "there was at least a distinct possibility of litigation under the [FCA] at the time of the

7

employee's actions." Id. (quotation omitted). Thus, the FCA prohibits retaliation against an employee who "put her employer on notice of possible [FCA] litigation by making internal reports that alert the employer to fraudulent or illegal conduct," even if an FCA claim is never filed. Id. at 1304. But, mere reporting of wrongdoing to supervisors, without alleging that the wrongdoing constitutes fraud on the government, does not qualify as protected conduct. Put simply, "[i]f an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." Id.

Here, McAllister alleges that the County was aware that he notified County, state, and federal officials of the alleged misappropriation of federal funds. (Doc. #8, ¶¶ 127-32.) He also alleges that he was harassed and discharged in retaliation for this conduct. (Id.) These allegations satisfy the second and third elements of his FCA retaliation claim. The remaining issue is whether, as alleged, McAllister's conduct is sufficient to support a reasonable conclusion that the County could have feared being reported to the government or sued directly in a *qui tam* action. The Court concludes that it does.

8

McAllister alleges that he notified County, state, and federal officials that the County was misappropriating federal funds. (Id. at ¶¶ 45-49, 125-27.) McAllister also alleges that he reported the same misconduct to the FAA and spoke to news organizations regarding the misappropriations. (Id.) Taken together, these allegations support a reasonable conclusion that the County could have feared McAllister would report the County's alleged fraudulent billing to Medicare and/or Medicaid or bring his own *qui tam* action. Therefore, the County's motion to dismiss Count IV is denied.

Accordingly, it is now

**ORDERED:**

Defendants' Motions to Dismiss (Docs. ##12, 15) are **GRANTED IN PART and DENIED IN PART**. Counts II, III, V, and VI of the Amended Complaint are **dismissed without prejudice** to filing a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order. The motions are otherwise **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   23rd   day of January, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record