```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                 FORT MYERS DIVISION
```

ARNOLD MCALLISTER, an individual,

      Plaintiff,

v.                            Case No: 2:14-cv-403-FtM-29CM

LEE COUNTY, FLORIDA BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Florida, KIM DICKERSON, an individual, and CHRISTINE BRADY, an individual,

      Defendants.

## OPINION AND ORDER

This matter comes before the Court on Defendants' Kim Dickerson and Christine Brady's Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint (Doc. #21) filed on February 17, 2015. Plaintiff filed a Response (Doc. #23) on March 3, 2015. For the reasons set forth below, the motion is denied.

**I.**

Plaintiff Arnold McAllister (McAllister) has filed a four-count Second Amended Complaint (Doc. #20) against Defendants Lee County Florida's Board of County Commissioners (the County), Kim Dickerson (Dickerson), and Christine Brady (Brady) for violating the False Claims Act (FCA) and for depriving McAllister of his right to freedom of speech. The underlying facts, as set forth

in the Second Amended Complaint, are as follows:

McAllister was hired by the County in 2002 as a pilot and EMT for Medstar, the County's medical helicopter program. (Id. at ¶ 9.) While working for Medstar, McAllister discovered that it was operating one of its helicopters without required federal certifications, which resulted in the County billing Medicare and Medicaid for unauthorized Medstar flights. (Id. at ¶¶ 24-40.) McAllister also discovered various safety issues concerning the County's operation of Medstar helicopters. (Id.) McAllister brought these issues to the attention of his supervisors at Medstar, but was rebuked. (Id. at ¶¶ 41-61.) McAllister was met with similar resistance when he raised the billing and safety issue with other County officials. (Id.) Dissatisfied with the County's response, McAllister raised the issues with the Federal Aviation Administration (FAA) and began to speak publicly, via news outlets and social media, concerning what he viewed as serious misconduct by the County. (Id.)

McAllister alleges that the County, via Brady (the County's Human Resources Director) and Dickerson (McAllister's supervisor), retaliated against him as a result of his speech. (Id. at ¶¶ 62-78.) Specifically, McAllister alleges that he was placed on administrative leave for "trumped up" and "fraudulent" incidents and was subject to harsh performance reviews despite the fact that he had been given excellent reviews prior to his criticism of

Medstar and the County. (Id.) McAllister was never reinstated from administrative leave. Instead, he was terminated along with other Medstar pilots when the County eliminated the Medstar program in its entirety. (Id.) Although the County claimed that McAllister's termination was the result of its decision to discontinue Medstar, McAllister alleges that the County's actual motive was retaliation for his whistleblowing. (Id.) Indeed, McAllister alleges that the County had a pattern and practice of punishing whistleblowers by terminating their employment. (Id.) In support, McAllister alleges that the County was hiring EMTs at the same time McAllister was terminated, yet never offered to allow McAllister, who was an EMT as well as a pilot, to transfer positions. (Id.)

Based upon these allegations, McAllister brings causes of action against the County, Dickerson, and Brady for violating 42 U.S.C. § 1983 (Section 1983) by depriving him of his First Amendment right to freedom of speech (Counts I-III); and a cause of action against the County for violating the FCA (Count IV). Dickerson and Brady now move to dismiss, arguing that they are entitled to qualified immunity.

## II.

Dickerson and Brady argue that the causes of action against them in their individual capacities (Counts II and III) must be dismissed because they are entitled to qualified immunity.

"Qualified immunity shields government officials sued in their individual capacities who act pursuant to discretionary authority insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Williams v. Alabama State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817– 18 (1982)). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Because it "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation," Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009) (quotation omitted), the availability of qualified immunity "should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228 (1991).

### A. Whether Dickerson And Brady Acted Within Their Discretionary Authority

To determine whether an act was performed within an individual's discretionary authority, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Int'l v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). Here, Dickerson and Brady's allegedly retaliatory acts consist of placing McAllister on

administrative leave, refusing to process McAllister's grievance requests, giving McAllister negative performance reviews, requiring McAllister to submit to a psychiatric evaluation, filing a false claim with the FAA regarding McAllister, and terminating McAllister's employment.  (Doc. #20, ¶¶ 64-78.)  It is indisputable that those actions, if done for a proper purpose, were within the scope of Dickerson's and Brady's official duties as McAllister's supervisor and the County's Human Resources Director.  See, e.g., Stanley v. City of Dalton, 219 F.3d 1280, 1285 (11th Cir. 2000) (supervisor acted within his discretionary authority when terminating employee); Sims v. Metro. Dade Cnty., 972 F.2d 1230, 1236 (11th Cir. 1992) (employee discipline was within a supervisor's discretionary authority).  Accordingly, the first prong of the qualified immunity analysis is met.

**B. Whether Dickerson And Brady Violated A Clearly Established Constitutional Right**

The next step is to determine whether, as alleged by McAllister in the Second Amended Complaint, Dickerson and Brady violated a clearly established constitutional right.  As the Supreme Court recently explained, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Ashcroft v. al-Kidd, 131 S. Ct.

2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). This standard "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.

As it pertains to McAllister's claims here, "[t]he law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech." Travers v. Jones, 323 F.3d 1294, 1295 (11th Cir. 2003). To prevail on such a claim, a plaintiff must show: "(1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the State as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action." Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007). Thus, if the allegations in the Second Amended Complaint satisfy this test, McAllister has adequately alleged that he was discharged for engaging in protected speech, and Dickerson and Brady are not entitled to qualified immunity at this stage of the proceedings.

   1. **Speech On A Matter Of Public Concern**

The threshold question is whether McAllister spoke as a citizen on a matter of public concern. In accordance with the Supreme Court's holding in Garcetti v. Ceballos, 547 U.S. 410 (2006), this question requires two separate analyses. The court must determine "(1) if the government employee spoke as an employee

or citizen and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern." Boyce v. Andrew, 510 F.3d 1333, 1342 (11th Cir. 2007) (citing D'Angelo v. Sch. Bd., 497 F.3d 1203, 1209 (11th Cir. 2007)).

The first inquiry is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lane v. Franks, 134 S. Ct. 2369, 2379 (2014). If a public employee speaks pursuant to his "official duties," the employee is not speaking as a citizen and the speech is not protected. Garcetti, 547 U.S. at 421. A number of relevant, but non-dispositive factors have been established to assist in the determination of whether the speech is within the scope of an employee's duties, including the employee's job description, whether the speech occurs in the workplace, and whether the speech concerns the subject matter of the employee's job. Abdur-Rahman v. Walker, 567 F.3d 1278, 1282 (11th Cir. 2009) (citing Garcetti, 547 U.S. at 420-421).

Here, McAllister alleges that he was employed by the County as a Medstar pilot and EMT. He further alleges that his job duties did not involve speaking to the media regarding Medstar safety and billing issues. Accepting these allegations as true, the Court concludes that McAllister has adequately alleged that he was

speaking as a private citizen when he disclosed the County's alleged misconduct to the media.

The second inquiry is whether McAllister's speech addressed a matter of public concern. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Lane, 134 S. Ct. at 2380 (quotation omitted). Here, McAllister alleges that he spoke to the media concerning the County's misappropriation of public funds and mismanagement of a public program. Such speech clearly addresses a matter of public concern. Id. at 2380 ("[C]orruption in a public program and misuse of state funds [] obviously involves a matter of significant public concern."); Garcetti, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of considerable significance."). Accordingly, the Court concludes that McAllister has adequately alleged that his speech addressed a matter of public concern and, therefore, this prong of the analysis is satisfied.

2. **The Interest Of The Citizen And The Interest Of The Employer**

"[I]f an employee speaks as a citizen on a matter of public concern, the next question is whether the government had an adequate justification for treating the employee differently from

- 8 -

any other member of the public based on the government's needs as an employer." Lane, 134 S. Ct. at 2380 (quoting Garcetti, 547 U.S. at 418). Here, under the facts alleged by McAllister, no such justification existed. According to McAllister, he raised the Medstar billing and safety violations internally with County officials and was rebuffed. Only then did he go public with this information. There is no justifiable government interest in disciplining and discharging an employee for disclosing government malfeasance and mismanagement, especially where, as McAllister alleges here, the County was given the opportunity to address the violations before McAllister spoke publicly. See id. (no justifiable government interest in disciplining an employee who testified truthfully regarding corruption in a public program and misuse of state funds). Accordingly, McAllister has satisfied this prong of the analysis.

### 3. The Role Of The Speech In The Adverse Employment Action

Finally, McAllister must adequately allege that his "speech played a substantial or motivating role in the adverse employment action." Vila, 484 F.3d at 1339. He has done so. In addition to circumstantial allegations such as the fact that McAllister was placed on administrative leave immediately following his speech, McAllister alleges that Dickerson subjected him to "verbal attacks that included specific reference to [his] . . . truthful disclosures" regarding Medstar. (Doc. #20, ¶ 70.) Additionally,

McAllister alleges that the County was hiring EMTs at the same time he was terminated, yet never offered to allow McAllister, who was an EMT as well as a pilot, to transfer positions. (Id. at ¶ 65.) Taken together, these factual allegations provide sufficient support for McAllister's assertion that his speech was a substantial or motivating factor behind Dickerson's and Brady's decisions to discipline him and terminate his employment.

In sum, McAllister has adequately alleged that he was discharged for engaging in protected speech, and, therefore, Dickerson and Brady are not entitled to qualified immunity at this stage of the proceedings.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendants' Kim Dickerson and Christine Brady's Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint (Doc. #21) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this   5th   day of May, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record